**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**WALTER PAGE NOE,**

        Plaintiff,

v.                                                   **Civil Action No. 3:10-CV-38
(BAILEY)**

**STATE OF WEST VIRGINIA,
JOE MANCHIN** *as chief executive*,
**WEST VIRGINIA REGIONAL JAIL AUTHORITY,
HAMPSHIRE COUNTY SHERIFF,
DEPUTY SERGEANT NORMAN J. LAUNI, II,
POTOMAC HIGHLANDS REGIONAL JAIL, and
MIKE LAWSON,** *as administrator*, **et al.,**

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

Currently pending before this Court are Defendants West Virginia Regional Jail Authority's, Potomac Highlands Regional Jail's, and Mike Lawson, Administrator's ("Jail Defendants") Motion to Dismiss [Doc. 8], filed June 1, 2010; Defendants Hampshire County Sheriff's and Deputy Sergeant Launi, II's ("Police Defendants") Motion to Dismiss [Doc. 17], filed June 4, 2010; the plaintiff's Motion to Proceed [Doc. 21], filed June 24, 2010; and Defendant State of West Virginia's Motion to Dismiss [Doc. 24], filed July 26, 2010. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendants' motions to dismiss should be **GRANTED** and the plaintiff's motion to proceed should be **DENIED**.

## BACKGROUND

**I.     Factual Allegations**

The plaintiff, Walter Page Noe, alleges the following facts in the challenged Complaint [Doc. 1], which arises from the plaintiff's arrest and detainment for possession of controlled substances and disorderly conduct (See [Doc. 1] at ¶¶ 1-44, 66). On February 6, 2010, the plaintiff invited Hampshire County Deputy Sergeant Norman Launi, ("Deputy Launi"), into his home while there was a tray of marijuana and water pipe in plain sight and with full knowledge that possession was a violation of the law. (Id. at ¶ 36). The deputy then became aggressive and menacing in his demeanor, demanding to know: "What is this shit?" (Id. at ¶ 41). Shortly thereafter, a second deputy entered the dwelling and "both deputies assumed aggressive stances, speaking with loud voice [sic] and putting Plaintiff into an unexpected arrest situation." (Id. at ¶ 42). The plaintiff protested to Deputy Launi "at which time both deputies pointed tazers at Plaintiff, despite Plaintiff offering no resistance, nor threat of resistance." (Id. at ¶ 43). The deputies then placed handcuffs "tightly" onto the plaintiff's wrists and transported him to the Potomac Highlands Regional Jail in Augusta, Hampshire County, West Virginia. (Id. at ¶ 44).

At the jail, the plaintiff was processed and placed into a holding cell, "which was not clean." (Id. at ¶ 47). Jail personnel did not allow the plaintiff to post bond and refused his request for paper, pen, and a "legal manual" to prepare a petition for writ of habeas corpus. (Id. at ¶¶ 51, 53-54). The plaintiff was forced to take psychotropic drugs, despite protesting to the authorities that the drugs were not part of a regimen prescribed by [his] physician . . .." (Id. at ¶¶ 58-59). When the plaintiff attempted to clean his cell, he was "forcibly placed into a restraint chair, despite [his] plea for a bucket and a mop." (Id. at ¶ 61). The plaintiff

2

was also "forced to remain in a cell with only a pajama top and bottom, no blanket or other covering, with a constantly changing temperature." (Id. at ¶ 63).

Upon his release from the jail, the plaintiff "research[ed] and found that certain drugs forced upon [him] at the jail . . . may and can have possible deadly effects . . .." (Id. at ¶ 68). In particular, the plaintiff alleges that he was forced to take Risperdal, which is typically used to treat schizophrenia. (Id. at ¶¶ 70-71). However, the plaintiff's research revealed that elderly patients with dementia who are treated with Risperdal are at an increased risk of death as a result of heart failure or pneumonia. (Id.). Subsequent to his release from jail, the plaintiff experienced cardiac and respiratory distress, which required the plaintiff to seek treatment for pneumonia at the VA Medical Center in Martinsburg, West Virginia. (Id. at ¶ 75). The plaintiff continues to have lower back pain, pain in his right hip, respiratory distress and heart palpitations not present nor experienced prior to his incarceration. (Id. at ¶¶ 76-77).

## II. Procedural History

On April 7, 2010, the plaintiff filed the above-described Complaint [Doc. 1] in the United States District Court for the Northern District of West Virginia, alleging various constitutional violations against the State of West Virginia; the West Virginia Regional Jail Authority, Potomac Highlands Regional Jail, and Mike Lawson, Administrator (the "Jail Defendants"); and the Hampshire County Sheriff and Deputy Segeant Norman Launi (the "Police Defendants"). The plaintiff seeks one billion dollars in damages from each defendant as well as an award of punitive damages. ([Doc. 1] at 11). On the same day, the plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* [Doc. 2], which this Court granted on April 28, 2010 [Doc. 5].

On June 1, 2010, the Jail Defendants filed a Motion to Dismiss [Doc. 8], arguing that the plaintiff's Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ([Doc. 8] at 1). With regard to Rule 12(b)(1), the Jail Defendants argue that they are immune from the plaintiff's claims because they are subdivisions of the State of West Virginia. (Id. at 2). As for Rule 12(b)(6), the Jail Defendants assert that the plaintiff's allegations against the West Virginia Regional Jail Authority and the Potomac Highlands Regional Jail cannot support claims pursuant to 42 U.S.C. § 1983, as neither is a "person" within the contemplation of the statute. (Id. at 2-3). The plaintiff also fails to state a claim against Mike Lawson, as administrator, because the Complaint contains no specific allegations concerning any individual involvement. (Id. at 3). Finally, the Jail Defendants reserved their right to assert additional affirmative defenses, including the failure of service of process and the failure to comply with the exhaustion requirements of the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e.

On June 4, 2010, the Police Defendants filed a Motion to Dismiss [Doc. 17], also arguing that the plaintiff's Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6). ([Doc. 17] at 1). The Police Defendants argue that the plaintiff's claims should be dismissed under Rule 12(b)(1) because they are protected by immunity. (Id. at 3). The plaintiff's Complaint should also be dismissed for failure to state a claim upon which relief may be granted because the plaintiff's allegations do not rise to the level of excessive force required to constitute a constitutional deprivation under section 1983. (Id.). Finally, the Police Defendants argue, service of process was not properly effected upon Deputy Launi, when his secretary received a copy of the Complaint and a summons. (Id. at 4-6).

On June 24, 2010, the plaintiff filed a Motion to Proceed [Doc. 20], requesting that

4

this matter be allowed to proceed to a scheduling conference. In reply, the Jail and Police Defendants ask that the plaintiff's motion be denied and their motions to dismiss be granted [Docs. 20 & 22].

On July 26, 2010, the State of West Virginia filed a Motion to Dismiss [Doc. 24], seeking to join the Jail Defendants' motion, including the reasoning offered therein. ([Doc. 24] at 1). In addition, the State asserts that the plaintiff has failed to perfect service of process, citing that the plaintiff only sent a certified mailing purporting to serve the State. (Id.).

## DISCUSSION

I. **Applicable Standards**

A. **Rule 12(b)(1)**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See* ***Materson v. Stokes***, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

**B.    Rule 12(b)(6)**

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true.  ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."  ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (internal quotations and citations omitted).  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

However, as this case involves a *pro se* plaintiff, this Court will only dismiss this matter if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ***Haines v. Kerner***, 404 U.S. 519 (1972).

6

## II. Analysis

### A. State of West Virginia's Motion to Dismiss

In its motion, the State of West Virginia argues that this Court lacks subject matter jurisdiction insofar as the plaintiff seeks monetary damages in the amount of one billion dollars from the State. For the reasons that follow, this Court agrees.[1]

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States" by citizens of another State, U.S. Const., Amdt. 11, and (as interpreted) by its own citizens. **Hans v. Louisiana**, 134 U.S. 1 (1890). Thus, as a general proposition, the doctrine of sovereign immunity bars suit against a state. However, the Supreme Court has articulated three narrow exceptions. First, a state can waive its immunity. See **Atascadero State Hosp. v. Scanlon**, 473 U.S. 234, 238 (1985) ("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."). Second, Congress may, in particular circumstances, abrogate a state's immunity. See **Fitzpatrick v. Bitzer**, 427 U.S. 445 (1976) (holding that Congress can make states liable to suit in federal court pursuant to statutes adopted under § 5 of the Fourteenth Amendment). Third, a suit may proceed against a state as long as it is directed at a state official and requests prospective relief. See **Ex parte Young**, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar suits against state officers to enjoin violations of federal law).

In the instant case, there is no question that the abrogation and **Ex parte Young**

---

[1]This Court finds that any response by the plaintiff to this motion would be futile. As such, judicial economy is furthered by ruling on its motion without further delay.

exceptions are inapplicable to save the plaintiff's claims against the State of West Virginia. First, due to an insufficient indication of an express congressional desire to make state governments liable under 42 U.S.C. § 1983, the Supreme Court has held that section 1983 does not abrogate Eleventh Amendment immunity. *See* **Quern v. Jordan**, 440 U.S. 332 (1979). Second, because the plaintiff seeks compensatory and punitive damages as his monetary relief, **Ex parte Young** is inapplicable. *See* **Edelman v. Jordan**, 415 U.S. 651 (1974) (holding that the Eleventh Amendment prevents a federal court from awarding damages to compensate past injuries when those damages will be paid by the state treasury).

The waiver exception requires a more extended analysis, yet is similarly unavailable to the plaintiff. As explained above, a state may waive its sovereign immunity and consent to suit in federal court. Such consent must be expressly and unequivocally made. **Port Authority Trans-Hudson Corp. v. Feeney**, 495 U.S. 299, 305 (1990). By state statute, the State of West Virginia has waived its sovereign immunity and consented to suit in *state court* to the extent it has authorized the State Board of Risk and Insurance Management to procure liability insurance providing coverage of all State "property, activities and responsibilities." *See* W.Va. Code § 29-12-5(a). Thus, the State may be sued in state court as long as recovery is sought under and up to the limits of the State's liability insurance coverage. *See* **Arnold Agency v. West Virginia Lottery Commission**, 206 W.Va. 583, 526 S.E.2d 814 (1999); **Parkulo v. West Virginia Board of Probation and Parole**, 199 W.Va. 161, 483 S.E.2d 507 (1997); **Pittsburgh Elevator Co. v. West Virginia Board of Regents**, 172 W.Va. 743, 310 S.E.2d 675 (1983). Here, however, the plaintiff

has sued the State of West Virginia in *federal* court, where the State has not consented to be sued. Under these circumstances, the immunity provided by the Eleventh Amendment remains intact as a bar to suing the State of West Virginia in the federal forum. Accordingly, insofar as the Complaint alleges claims against the State of West Virginia, it should be **DISMISSED WITHOUT PREJUDICE**.

> **B.**     **Jail Defendants' Motion to Dismiss**

In their motion, the Jail Defendants argue that the plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1). In support of their argument, the Jail Defendants assert that the plaintiff's claims are barred by sovereign immunity. In the case of the West Virginia Regional Jail Authority, this Court agrees.

> **1.**     **West Virginia Regional Jail Authority**

In **Roach v. Burke**, 825 F.Supp. 116 (N.D. W.Va. 1993), the Honorable Judge Robert E. Maxwell recognized that the West Virginia Regional Jail Authority (the "Authority") is protected by sovereign immunity as a subdivision of the State of West Virginia. Edward Roach, a former Correctional Officer at the regional jail in Martinsburg, West Virginia, brought a section 1983 action against the Authority and other individuals in their official capacity for suspending and then discharging him without notice and a hearing. **Id.** at 117. The defendants argued that they enjoy the constitutional immunity of the Eleventh Amendment. **Id.** In analyzing whether the Authority is an arm of the State of West Virginia, Judge Maxwell considered five factors:

> [1] whether its powers are substantially created by the legislature; [2] whether its governing board's composition is prescribed by the legislature; [3] whether it operates on a statewide basis; [4] whether it is financially dependent on public funds; and [5] whether it is required to deposit its funds in the state

9

treasury.

*Id.*

In applying these factors, Judge Maxwell determined that the Authority was, in effect, the State of West Virginia. First, the Authority was created by the Legislature with its purpose and governing procedures set forth at W.Va. Code §§ 31-20-1 through 31-20-27. Second, section 31-20-3 sets forth the composition of the Authority's governing board in which the governor appoints members of the board with the advice and consent of the senate. Third, the language of the statute is clear that the Authority was created to serve the inmates and citizens of the entire state. Fourth, the Authority was initially funded via the State Treasury and continues, in large part, to be funded from state and federal funds. Fifth, the Authority maintains a special account in the state treasury which consists of a revolving fund containing all appropriates and payments to the Authority with any excess funds transferred to the general fund of the State Treasury. *Id.* at 117-18. As such, Judge Maxwell concluded that the Authority enjoys the constitutional immunity of the Eleventh Amendment. *Id.* at 119.

Similar to the plaintiff in *Roach*, the plaintiff in the case at bar brings section 1983 claims against the Authority. For the reasons articulated by Judge Maxwell, the Authority enjoys sovereign immunity from the plaintiff's claims. Accordingly, insofar as the Complaint alleges claims against the West Virginia Regional Jail Authority, it should be **DISMISSED WITHOUT PREJUDICE**.

        2.       **Potomac Highlands Regional Jail**

In their motion, the Jail Defendants argue that the Potomac Highlands Regional Jail

(the "Regional Jail") is not a "person" subject to suit under 42 U.S.C. § 1983. This Court agrees.

Section 1983 provides, in pertinent part, that:

> Every ***person*** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

(Emphasis added).

In the instant case, the plaintiff attempts to state an excessive force claim against the Regional Jail based upon, *inter alia*, allegations that correctional officers forced him to take psychotropic drugs against his will. However, the plaintiff cannot state a claim against the Regional Jail, as that entity is not a "person" subject to suit under section 1983. *See* ***Minor v. Yanero***, Civil Action No. 5:06-CV-75, 2008 U.S. Dist. LEXIS 24049, *14 (N.D. W.Va. Mar. 26, 2008) (finding that the Potomac Highlands Regional Jail is not a person subject to suit under 42 U.S.C. § 1983). Accordingly, insofar as the Complaint alleges claims against the Potomac Highlands Regional Jail, it should be **DISMISSED WITHOUT PREJUDICE**.

### 3. Mike Lawson, Administrator of Potomac Highlands Regional Jail

In their motion, the Police Defendants argue that "[i]t would seem fair to assume that since [the plaintiff] sued [Mike Lawson] as 'administrator' that he is sued in his official capacity." ([Doc. 8] at 2, n. 1). In further support of dismissing Mr. Lawson as a defendant in this matter, the Police Defendants emphasize that "[n]o acts of Mr. Lawson are directly

pleaded." (Id.). This Court agrees.

In the instant case, the plaintiff makes no specific allegations of a violation of any constitutional right against the named defendant, Mike Lawson. Instead, it appears that the plaintiff merely names Mr. Lawson in his official capacity as the Administrator of the Potomac Highlands Regional Jail. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." ***Kentucky v. Graham***, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (Citing ***Monell v. New York City Dept. of Social Services***, 436 U.S. 658, 694 (1978)). Here, the plaintiff has made no allegation that would support such a finding, and therefore, Mr. Lawson should be dismissed as a defendant. *See* ***Custer v. Potomac Highlands Regional Jail, et al.***, Civil Action No. 1:08-CV-93, 2008 U.S. Dist. LEXIS 47022, *2 (N.D. W.Va. June 17, 2008) (adopting magistrate judge's recommendation that Mr. Lawson, as Administrator of Potomac Highlands Regional Jail, be dismissed for these reasons under nearly identical circumstances involving a *pro se* plaintiff's claims against him pursuant to 42 U.S.C. § 1983). Accordingly, insofar as the Complaint alleges claims against Mike Lawson, as Administrator of the Potomac Highlands Regional Jail, it should be **DISMISSED WITHOUT PREJUDICE**.

**B.     Police Defendants' Motion to Dismiss**

In their motion, the Police Defendants argue that the plaintiff's Complaint should be

dismissed pursuant to Rule 12(b)(6). In support of their argument, the Police Defendants argue that the plaintiff's allegations regarding the conduct of Deputy Launi fail to reach the level of a constitutional deprivation. This Court agrees.

To succeed on an excessive force claim, the plaintiff must demonstrate that the law enforcement officer "inflicted unnecessary and wanton pain and suffering" upon the detainee. *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008). This determination turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotations omitted); *Wilkins v. Gaddy,* __ U.S. __ , 130 S.Ct. 1175 (2010) (describing this issue as the "core judicial inquiry"). Moreover, this Court must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, this Court would "give encouragement to insubordination in an environment which is already volatile enough." *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999).

In this case, the plaintiff alleges that upon entering his dwelling Deputy Launi "immediately became aggressive, and menacing in his demeanor," demanding an explanation for the plaintiff's possession of a controlled substance in the officer's plain sight. Next, the plaintiff "protested to Deputy Launi, at which time [he and another deputy] pointed tasers" at the plaintiff. Finally, Deputy Launi and another deputy "placed handcuffs tightly" onto the plaintiff's wrists, "causing significant pain, and placed him roughly" into the deputies' patrol vehicle. Undoubtedly, none of these allegations constitute the "infliction of unnecessary and wanton pain and suffering" applied to "maliciously and sadistically"

13

cause harm to the plaintiff. First, Deputy Launi's demeanor does not constitute force, let alone excessive force. Moreover, merely pointing a taser at the plaintiff cannot support a claim for excessive force, especially in the light of the plaintiff's "protest" to being questioned about his possession of a controlled substance. See **Michenfelder v. Sumner**, 860 F.2d 328 (9th Cir. 1988) (no unconstitutional use of taser gun where plaintiff only complained of its threatened use). Finally, placing handcuffs on the plaintiff's wrists "tightly" and placing him into a patrol vehicle "roughly" also fail to reach the level of required force. See **Draper v. Reynolds**, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding nearly identical claims of force without merit). Thus, the plaintiff has failed to state allegations sufficient to support an excessive force claim. As such, the plaintiff cannot state a claim against the Hampshire County Sheriff. Accordingly, insofar as the Complaint alleges claims against Deputy Launi and the Hampshire County Sheriff, it should be **DISMISSED WITHOUT PREJUDICE**.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Defendants West Virginia Regional Jail Authority's, Potomac Highlands Regional Jail's, and Mike Lawson, Administrator's Motion to Dismiss **[Doc. 8]**; Defendants Hampshire County Sheriff's and Deputy Sergeant Launi, II's Motion to Dismiss **[Doc. 17]**; and Defendant State of West Virginia's Motion to Dismiss **[Doc. 24]** should be, and hereby are, **GRANTED**. As such, the plaintiff's Motion to Proceed **[Doc. 21]** should be, and hereby is, **DENIED**. Accordingly, the Court hereby **DISMISSES WITHOUT PREJUDICE** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** it **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record and to mail a certified copy to the *pro se* plaintiff.

**DATED**: July 29, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE